# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

U.S. Specialty Insurance Co.,            Case No. 3:16CV2510

       Plaintiff

       v.                                      **ORDER**

Drake Aerial Enterprises, LLC, et al.,

       Defendants

This is an insurance coverage dispute.

Plaintiff U.S. Specialty Insurance Company (Specialty Insurance) issued a liability policy to Drake Aerial Enterprises, LLC (Drake). On June 27, 2016, a Drake airplane was towing an advertising banner when it ran out of fuel and lost power. The pilot released the banner and crash-landed in a Detroit residential neighborhood. On its way down, the plane struck and downed a power line, which came in contact with Ms. Theresa Surles. She died later that day from the effects of the electrical shock she had received.

The representative of Ms. Surles' estate, Howard T. Linden, sued Drake in the Circuit Court of Wayne County, Michigan. Drake tendered the defense to Specialty Insurance, which declined coverage.

Specialty Insurance did so on the basis of an exclusion in its policy that states that the policy does not cover "Bodily Injury, property damage or consequential loss arising out of the impact of the aircraft or the advertising apparatus with *transmission lines*." (Emphasis supplied). Asserting that the power line that the plane hit was a "transmission line," Specialty Insurance has brought this declaratory judgment action to determine the rights of the parties.

The only issue in this case is the meaning of the term "transmission line" in the exclusion. According to Drake and Linden, a "transmission line" is a power line that carries high-voltage power over long distances, rather than a line that conveys power to customers' residences. Specialty Insurance contends that the term "transmission line" is commonly understood to be any power line that carries electricity, whether over long distances or short distances.

Pending are a motion by Specialty Insurance for summary judgment (Doc. 49) and counter-motions for summary judgment by Linden (Doc. 54) and Drake (Doc. 55). For the reasons that follow, I grant Drake's and Linden's counter-motions and deny the motion by Specialty Insurance.

## Discussion

### A. Doctrines for Interpreting an Insurance Policy

The governing doctrines for interpreting contracts, including insurance policies, which I apply here, are:

- "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties. The general rule is that contracts should be construed so as to give effect to the intention of the parties." *Aultman Hosp. Ass'n v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 53 (1989);

- "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 245–46 (1978);

- "[A]bsent some special circumstance, such as a contractual definition, or a commercial or technical meaning acquired by usage and intended to be used by the parties, or a special meaning manifested in the contractual context, the entire policy must be considered and construed in a fashion which accords words and phrases therein their natural and usual meaning." *Gomolka v. State Auto. Mut. Ins. Co.,* 70 Ohio St. 2d 166, 172–73 (1982);

- "The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.*, 45 Ohio St. 3d 63, 65 (1989);

- "[W]here an insurer relies on an exclusion to deny coverage, the insurer has the burden of proving the applicability of the exclusion." *Will Repair, Inc. v. Grange Ins. Co.*, 2014-Ohio-2775, ¶ 21 (Ohio App. 2014);

- "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane*, *supra*;

- "[L]anguage is unambiguous if, from reading only the four corners of the instrument, the language is clear, definite, and subject to only one interpretation." *Beverly v. Parilla*, 165 Ohio App. 3d 802, 808 (2006);

- "The language is ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning." *Id.*; and

- The Sixth Circuit and other federal courts, as well as the Ohio courts, look to dictionary definitions to determine the plain and ordinary meaning of undefined terms in insurance contracts. *Westfield Ins. Co. v. Continental Ins. Co.*, 2015 WL 1549277, *4 (N.D. Ohio 2015) (Nugent, J.); *Rite Aid of Ohio, Inc. v. Marc's Variety Store, Inc.*, 93 Ohio App.3d 407, 415 (1994).

### B. The Doctrines Applied to the Exclusion

Linden argues that Drake's plane hit a "distribution" line rather than a "transmission line." line. In support, he has submitted affidavits from DTE Energy Resources, LLC, the line's owner. Those affidavits make clear that, in the electric power industry, the term "transmission line" technically refers to power lines that transmit high-voltage current over long distances. (Doc. 53, pg. ID 811; Exh. B).[1] But unless a policy states otherwise, which it does not here, I

---

[1] The DTE affidavits correspond, not surprisingly, with the many online definitions of "transmission line" under the subheading, "Electrical Engineering, Circuits, Power." *See* https://goo.gl/Bgmnsy.

3

cannot substitute a specialized technical meaning for a term's "natural and usual meaning."[2] *Gomolka*, *supra*.

Specialty Insurance contends that the way to determine the "plain and ordinary" meaning of the term "transmission line" is to look separately at the dictionary definitions of "transmit," "transmission," and "line." It recites the definitions of those words from the Merriam-Webster Dictionary:

- Transmit: "to send or convey from one . . . place to another"; "to cause something (such as . . . force) to . . . be conveyed through . . . a medium; conduct . . . over a wire."

- Transmission: "an act of transmitting."

- Line: "the principal circuits of an electrical power system."

(Doc. 49, pg. ID 644–45) (citing The Merriam-Webster Dictionary, 11th ed.).

The flaw in the Specialty Insurance approach is that the same dictionary provides a specific definition for the phrase "transmission line:"

> [A] metallic circuit of three or more conductors used to send energy *usually at high voltage over a considerable distance*; specifically: a usually metallic line used for the transmission of signals or for the adjustment of circuit performance and often consisting of a pair of wires suitably separated, a coaxial cable, or a wave guide.

https://www.merriam-webster.com/dictionary/transmission%20line (emphasis supplied).

As noted above, law from both the Sixth Circuit, *see Westfield Ins. Co.*, *supra*, and Ohio, *Rite-Aid*, *supra*, directs that I look to dictionary definitions of a disputed term.

Having done so, I have found only the foregoing definition of "transmission line." That being so, and in want of any other reliable guide as to the "plain and ordinary" meaning of the

---

[2] Reaching this conclusion, I need not decide Specialty Insurance's evidentiary objection to the affidavits.

term "transmission line," I conclude that, as used in the Specialty Insurance policy, the term "transmission line" refers to a power line that carries energy at high voltage over long distances. Thus the term does not include the line that the Drake airplane struck and severed on June 27, 2016.[3]

That "transmission line" has essentially the same meaning in the electric utility industry and related areas, such as electrical engineering, does not alter this outcome. Such equivalence does not diminish the reliability or significance of the more general meaning and usage.

I have considered all arguments that the parties have made; to the extent I have not specifically addressed, in this order, any particular argument, that is because it is not necessary to do so, given my conclusion that the exclusion does not bar coverage.

## Conclusion

It is, accordingly,

ORDERED THAT

1. The motion of U.S. Specialty Insurance Co. for summary judgment (Doc. 49) be, and the same hereby is, denied; and

2. The counter-motions of Drake Aerial Enterprises (Doc. 55) and Howard T. Linden (Doc. 54) be, and the same hereby are, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[3] I have tried to be diligent and thorough in my search for other free-standing definitions of "transmission line." If, though, other dictionaries might state that, in common usage, "transmission line" encompasses all power lines, the effect of such contrasting definition would be to show that the term is, at worse, ambiguous. Which would be of no comfort or benefit to Specialty Insurance. *E.g., Lane*, *supra* (citing, *e.g.*, *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, syll. ¶1 (1988)).